```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

MICHELE Y. RATLIFF,

      Plaintiff,

v.                                Civil Action No. 2:11-cv-00562

GYMBOREE OPERATIONS, INC.,
a foreign corporation

      Defendant.

## MEMORANDUM OPINION & ORDER

Pending is defendant's motion for summary judgment, filed April 18, 2012.

### I.

Defendant Gymboree Operations, Inc. is a California corporation. Plaintiff Michelle Ratliff is a West Virginia citizen, and was formerly the General Manager of two of Gymboree's retail stores in Charleston, West Virginia. Gymboree maintains that it fired Ratliff for violating company policy by falsifying employees' time records and lying to cover her tracks. Ratliff claims that Gymboree discriminated against her on the basis of her age, devising a pretext for her firing so that younger employees could assume her post.

Ratliff's tenure with Gymboree began on April 29, 2007, when she was hired as Store Manager of Gymboree, a children's clothing retailer at the Charleston Town Center in Charleston, West Virginia.  In 2009, Gymboree opened a second retail store, known as Crazy 8, at the same location.  Ratliff was subsequently promoted to General Manager, the position that she held until her termination.

The duties of a Store Manager and General Manager are similar, except that a General Manager is in charge of two stores.  Among those duties, Ratliff was responsible for reviewing and approving her employees' time records.  She was also responsible for complying with and ensuring her subordinates' compliance with Gymboree's corporate policies.  Two such policies are of particular relevance to this case.  First, Gymboree's Employee Standards Policy, Time and Attendance Policy, and Business and Ethics Code of Conduct all make clear that employee time recods must reflect accurate accounts of time worked, and that any forgery, falsification, or alteration of such records will result in discipline, up to and including termination.  (Ratliff Dep. 42-58).  Second, the Business and Ethics Code of Conduct requires employees to be "truthful in all

2

we do" and specifically lists "dishonesty" among those infractions that may lead to discipline, including termination. (Shickedanz Aff., Ex. 1, at 7-8).

On September 17, 2010, Gymboree terminated Ratliff's employment, citing her admitted violations of the above policies. The violations occurred during a single episode that began on the evening of August 10, 2010. That evening, Ratliff received word that her District Manager, Abby Gerlach, would be visiting the Charleston Gymboree location the next day for an audit, one day earlier than expected. Pressed for time, she and Tawnie Wright, the store's Assistant Manager, stayed late to help prepare for the inspection. Although Wright's shift was scheduled to end at 5:30 p.m., both women worked until 1:00 a.m. According to Wright, she "didn't feel it was possible to leave." (Wright Dep. 46-48). When Wright attempted to "clock out," she was unable to enter her hours into Gymboree's electronic timekeeping system. Ratliff told Wright they would enter the time on the manual punch log and into the electronic system the next day. (Ratliff Dep. 102-103).

The next day, Ratliff prepared an entry on the manual punch log reflecting that, on August 10, 2010, Wright quit

3

working at 5:30 p.m.  She admits that this entry was false. (Id. at 105-06).  Later, she transferred that false record to the electronic system.  (Id.).  She told Wright she would "make it up later in the week," and she did:  subsequently, Ratliff submitted additional false time entries for August 12 and August 14, with the August 14 time recorded as having been worked at the Crazy 8 location.  Ratliff claims that she falsified the records because she "knew she didn't have the hours" in the budget to cover the hours Wright worked, and had to close out her payroll before Gerlach's visit.  (Id. at 104).  Wright was eventually paid for the hours she worked, and there is no allegation that Ratliff received any pecuniary gain by manipulating Wright's hours.

Gerlach's audit came and went, with no discussion of the events that had transpired the night before.  However, Gerlach visited again in September, and this time Wright told Gerlach about the long shift she had worked before the August audit.  (Gerlach Dep. 82).  Surprised by such a long and late shift, Gerlach requested the time documentation from that week. (Id. at 84-86).  Of course, she quickly discovered the discrepancies.  After following up with Wright, Gerlach

4

contacted Gymboree's Human Resources department to report what she had learned. (Id. at 87).

On September 15, 2010, Gerlach and Bridget Schickedanz, Gymboree's Senior Human Resources Manager, met with Ratliff to discuss several issues, including the timekeeping entries from August 10. (Ratliff Dep. 135). Ratliff flatly lied, telling her supervisors that she was not even in the store on the night in question. (Id. at 140). She later testified in an administrative hearing that she lied because she was "in shock and [she] didn't want to get Tawnie in trouble . . . didn't want to get anyone in trouble." (Admin Tr. 81-82). Schickedanz suspended Ratliff pending completion of the investigation. When asked to give a written statement, Ratliff responded that she would write it at home.

But before that could happen, on September 16, 2010, Ratliff called Schickedanz to confess. "I had lied," she said. "I really was in the store that Tuesday." (Ratliff Dep. at 153). The next day she sent in her written statement, admitting that she submitted false timekeeping records and adding that "I know what I did was a policy violation & in correcting it might have made it worse." (Id. at 160). In light of these

5

admissions and the results of its investigation, Gymboree fired Ratliff the next day.

Gymboree ultimately decided not to hire a new General Manager, opting instead to employ two Store Managers, one at each retail location. Wright took over as Store Manager at Gymboree, while Julie Gernet, who had been a part-time Assistant Manager at Gymboree, became Store Manager at Crazy 8. Both women were younger than Ratliff, who was 47 years old.[1] Ratliff testified that Wright did an "outstanding" job as Assistant Manager, and that she could "absolutely" see Wright moving up in the company. (Id. at 91). She further testified that Gernet did a "great job" with customer service, and also had a chance to rise through the ranks. (Id. at 89-92). Nonetheless, Ratliff now claims that it is her "belief" that Gerlach, Wright, and Gernet conspired to have her fired because of her age. (Pl.'s Resp. 8).

On July 18, 2011, Ratliff filed suit in the Circuit Court of Kanawha County, West Virginia, alleging age discrimination and bankruptcy debtor discrimination. On August

---

[1] Ratliff asserts, without citation to the record, that the women were 25 and 31 years of age, but does not say which age belongs to which woman.

6

17, 2011, Gymboree removed the action to federal court, invoking subject-matter and diversity jurisdiction. On April 14, 2012, Gymboree filed its motion for summary judgment. Ratliff has responded, and that motion is now ripe for adjudication.

II.

A.  Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out

to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather,

8

the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

B.  Motion for Summary Judgment

    1.  Bankruptcy Discrimination

In Count One of her complaint, Ratliff alleges that Gymboree fired her because she filed for bankruptcy protection. Termination of an employee on this basis is prohibited by federal law.  11 U.S.C. § 101, <u>et</u> <u>seq.</u>  Ratliff now explicitly abandons this allegation, electing to pursue only her age discrimination claim.  (<u>See</u> Pl.'s Resp. 1).  As a result,

Gymboree is entitled to summary judgment on Count One of the complaint.[2]

### 2. Age Discrimination

Ratliff's sole remaining claim, as set forth in Count II, is that Gymboree fired her on account of her age, in violation of the provisions of the West Virginia Human Rights Act. See W. Va. Code § 5-11-1 et seq. In order to establish a prima facie case of age discrimination, Ratliff must prove that (1) she is a member of a protected classification; (2) Gymboree made an adverse decision concerning her employment; and (3) but for her protected status, the adverse decision would not have been made. Waddell v. John Q. Sammons Hotel, Inc., 572 S.E.2d 925, 927 (W. Va. 2002). If Ratliff can establish these elements, the burden shifts to Gymboree to show "some nondiscriminatory reason for the decision." Conway v. Eastern Associated Coal Corp., 358 S.E.2d 423, 430 (W. Va. 1986).

---

[2] Despite the disposition of Ratliff's lone federal claim, the court retains jurisdiction of this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332(a)(1). (See Notice of Removal, Dkt. No. 1, 4).

The first two elements of plaintiff's <u>prima</u> <u>facie</u> case are easily satisfied. The protected classification includes individuals over 40 years of age, W. Va. Code § 5-11-3(k), and at the time of her termination, Ratliff was 47. With respect to the second element, there is no dispute that Ratliff's termination constituted an adverse employment decision.

Only the third element is at issue. As plaintiff notes, there is rarely "direct proof" of discrimination, and "direct proof . . . is not required." <u>Conway</u>, 358 S.E.2d at 429. But plaintiff must still show "some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." <u>Id.</u> at 429-30. Examples of such evidence may include:

> an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others[,] by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

<u>Id.</u> (footnotes omitted). In moving for summary judgment, Gymboree contends that Ratliff "has no evidence showing any

11

nexus between her age and her termination." (Def.'s Mem. at 17). The court now assesses that contention.

Ratliff claims that the "most compelling evidence" of Gymboree's discrimination is that she was replaced by younger employees. However, when an older employee is replaced, mere chance often dictates that, in a substantial number of instances, potential replacements will be younger. Further, an employer should not be subjected to suit simply and solely because it elects to hire a qualified young person when an older employee is terminated. As a result, this fact alone does not give rise to an inference of discrimination, nor does it establish a prima facie case. See Smith v. Sears, Roebuck, and Co., 516 S.E.2d 275, 280-81 (W. Va. 1999) (plaintiff failed to show "any sort of nexus" between age discrimination and his termination, despite demonstrating, inter alia, that he was replaced by a younger employee). If this is indeed plaintiff's "most compelling" evidence, then no reasonable jury could find in her favor.

What Ratliff describes as her "additionally compelling evidence" is no more effective. Ratliff argues that discrimination is shown inasmuch as her subordinate, Tawnie

12

Wright, was not disciplined,[3] even though she was "complicit" in Ratliff's fraudulent recordkeeping.  A plaintiff may establish discrimination on such a basis only when the differently treated employees "both engaged in similar conduct."  See W. Va. Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency, Inc., 329 S.E.2d 77, 85 (W. Va. 1985).  In this case, not only was Wright's participation limited to that of a subordinate carrying out the direct orders of her supervisor, but Ratliff went on to lie about the incident during Gymboree's investigation, whereas Wright did not.  Thus, the two were not similarly situated, and Ratliff is therefore not entitled to the inference that their disparate treatment is evidence of discrimination.

  Ratliff next offers that her own testimony is enough to avoid summary judgment.  It can be summarized succinctly.  Her district manager, Gerlach, "got along better," seemed more "chummy," and "seem[ed] to have a lot of things in common, age-wise" with the younger employees. (Ratliff Dep. 183).  Further, it is her belief that "some sort of conspiracy" led to her firing.  (Id. at 187).  Specifically, she believes

---

[3] The record indicates that Wright was in fact, "verbally counseled" by Gerlach in response to this incident.

13

> they [Wright and Gernet] wanted to be managers of the store and Abby [Gerlach] was looking for somebody that was younger and somebody that she can mold into what she wanted them to be instead of what I had already grown to being in retail so long.

(Id.). This testimony amounts to nothing more than plaintiff's unsupported speculation and is insufficient to give rise to a permissible inference of discrimination.[4]

In light of the lack of any evidence showing a causal relationship between Ratliff's age and her termination,[5] the court concludes that Ratliff has not established a prima facie case of age discrimination under the West Virginia Human Rights Act.

---

[4] Plaintiff's mere speculation requires no rebuttal, but the court notes the substantial and undisputed evidence in the record indicating that: (1) Gerlach had no conversation with Wright or Gernet about replacing Ratliff before Ratliff's termination, (2) Gerlach searched for outside candidates to replace Ratliff, and (3) Wright and Gernet were not hired as Store Managers for several weeks after Ratliff's termination. (Gerlach Dep. 111-15, 116-17, 122-23).

[5] In addition to the contentions discussed above, Ratliff, in a single sentence unsupported by any exhibit, asserts that "at the time of [Ratliff's] termination, only 6 of the 42 manages [sic] nationwide were [Ratliff's] age." (Pl.'s Resp. 10). Ratliff does not offer any evidence that any other manager over the age of 40 was terminated for any reason, or that Gymboree had any policy or practice against hiring General Managers in that age group. Even accepting this unsupported allegation as true, it is not evidence of discrimination.

Even if Ratliff could establish a prima facie case, it is undisputed that she violated company policy by falsifying time records and lying about it during Gymboree's subsequent investigation, a clear nondiscriminatory cause for her termination.  Ratliff claims to have been authorized on other occasions "to play with her time log," (Admin. Tr. 73), but she admits that she did not obtain authorization to alter the time logs at issue in this case, (Ratliff Dep. 129-30), and that doing so was a plain violation of company policy.  (Id. at 161). Her subsequent dishonesty not only belies the claim that she believed her actions were authorized, but also constituted a second, independent basis for her termination.  Since 2008, when the General Manager position was created by Gymboree, eight such individuals have been terminated.  Including Ratliff, five were fired for violations related to falsifying time records, three of whom were under the age of 40.  (Schickedanz Aff. ¶ 9-14; Shanahan Aff. ¶ 3-6).  Further, it is undisputed that Gymboree has consistently fired employees who lied during a company investigation.  (Shickedanz Aff. ¶ 15).

Ratliff would rely on the decision of the Circuit Court of Kanawha County, West Virginia, awarding her

15

unemployment benefits following her termination. (See Pl.'s Ex. 1). In so ruling, the court found that "the employer has not demonstrated that the policy violation warranted immediate termination." (Id. at 4). As Gymboree points out, however, unemployment benefits decisions have no preclusive or binding effect in a separate claim for wrongful termination. See Osborne v. King, 570 F.Supp.2d 839, 845-48) (S.D. W. Va. 2008). In this case, the court finds that it is not persuasive either. First, "the statutory standard applicable in unemployment compensation claims is more liberal" than the standard for claims of wrongful termination. See Slack v. Kanawha County Housing and Redevelopment Agency, 423 S.E.2d 547, 558 (W. Va. 1992). Second, Gymboree did not make an appearance at those proceedings, and thus did not cross-examine Ratliff or introduce its own evidence, as it has here. Finally, the unemployment decision focuses solely on Ratliff's conduct related to the submission of false time logs, but does not consider her subsequent dishonesty. As a result, plaintiff can make no showing of pretext.

In sum, Ratliff is unable to establish a causal link between her protected status and her termination, and the

16

undisputed evidence makes clear that she was fired for legitimate, nondiscriminatory reasons. Accordingly, her age discrimination claim cannot stand.

### III.

Pursuant to the forgoing analysis, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, granted as to all claims.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATE: July 11, 2012

John T. Copenhaver, Jr.
United States District Judge

17